# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RHONDA G. DENISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-1290-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the circumstances of this case in the administrative law judge's (ALJ's) use of the Medical-Vocational Guidelines (the grids) without vocational expert (VE) testimony, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.      Background

Plaintiff applied for DIB and SSI on September 22, 2006 alleging disability since July 15, 2004.  (R. 20, 66-68, 393-96).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ.  (R. 20, 32-33, 46, 389, 391).  Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ William H. Rima on August 19, 2008.  (R. 20, 415-35).  At the hearing, it was noted that the medical evidence did not contain results of a test for and diagnosis of lupus or of a sleep study and diagnosis of sleep apnea.  (R. 420-21, 423-26, 428-30).  Plaintiff reported that the diagnoses were made at the Hutchinson Clinic, and the Pratt Medical Center respectively, and she and counsel stated that they could get the records for the ALJ.  (R. 421, 430).  The ALJ stated that he would leave the record open for thirty days for Plaintiff to submit the records.  (R. 434-35).  On September 12, 2008, the Social Security Administration received Hutchinson Clinic medical records from Plaintiff's attorney, and entered them into the record as Exhibit 10F.  (R. 294-376).  On January 12, 2009, the ALJ sent the medical records, interrogatories, and a blank Medical Source Statement to Dr. Anne Winkler, a rheumatologist, and requested that she complete and return them.  (R. 166).  Dr. Winkler completed the forms on January 14, 2009 and returned them to the ALJ.  (R. 377-88).  The ALJ proffered Dr. Winkler's opinions to Plaintiff in a letter dated February 2, 2009, but there is no record that Plaintiff took any action thereon.  (R. 174-77).  On April 1, 2009, ALJ Rima filed a decision in which he determined that Plaintiff is unable to perform her past relevant work, but that using grid rule 202.21 as a framework for decisionmaking there are jobs that exist in significant

2

numbers in the national economy that Plaintiff is able to perform.  (R. 28-29) (citing 20

C.F.R., Pt. 404, Subpt. P, App. 2, § 202.21).  Consequently, he determined Plaintiff is not

disabled within the meaning of the Act, and denied her applications.  (R. 29-30).

Plaintiff submitted additional evidence and requested Appeals Council review of

the ALJ's decision.  (R. 16, 397-414).  The Council made that evidence a part of the

record; but determined that it does not suggest greater limitations for Plaintiff or provide a

basis to change the ALJ's decision, found no reason to review the ALJ's decision, and

denied Plaintiff's request for review.  (R. 9-12).  Therefore, the ALJ's decision is the final

decision of the Commissioner.  (R. 6);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir.

2006).  Plaintiff now seeks judicial review of that decision.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g));  Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

3

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

        An individual is under a disability only if that individual can establish that she has

a physical or mental impairment which prevents her from engaging in any substantial

gainful activity and which is expected to result in death or to last for a continuous period

of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity

that she is not only unable to perform her past relevant work, but cannot, considering her

4

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment, and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or

equal a listed impairment, the Commissioner assesses claimant's residual functional

capacity (hereinafter RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is

used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--

whether claimant can perform her past relevant work, and whether, when considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show jobs in the economy within Plaintiff's

capability.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

 Plaintiff claims the ALJ committed numerous errors in the decision at issue.  She

claims that the evidence does not support the ALJ's credibility determination; that the

ALJ should have recontacted Plaintiff's treating physician, and that in any case he erred

in evaluating the medical opinions; that the ALJ failed in his duty to develop the record

with regard to the medical evidence, with regard to testimony at the hearing, and with

regard to securing a consultative examination; that the ALJ failed to provide a proper

narrative discussion regarding his RFC assessment; and that the ALJ erred by not

securing the testimony of a vocational expert (VE) to determine whether there are a

significant number of jobs available in the economy which are within the RFC assessed

for Plaintiff.  In his brief, the Commissioner responds to each claim presented by Plaintiff

and argues that the ALJ applied the correct legal standard and that substantial evidence in

the record supports the decision.  The court finds that remand is necessary because the

ALJ erred in failing to secure VE testimony regarding the number of jobs in the economy

which are available to an individual with the nonexertional limitations assessed here.

 For purposes of deciding this case, the court will assume without deciding that the

ALJ's decision is correct through step four of the sequential evaluation process and that

Plaintiff is unable to perform her past relevant work as the ALJ determined.

Nevertheless, the court finds that Plaintiff raises a substantial issue whether the ALJ's

RFC assessment is proper based upon Plaintiff's claims regarding credibility

determination, evaluation of the medical opinions, and narrative discussion.  On remand,

the Commissioner shall address Plaintiff's remaining arguments and make an RFC

assessment in accordance with the law and regulations.

## III.    The Use of a Vocational Expert Was Necessary in this Case

The ALJ assessed Plaintiff with the RFC for a range of light work, with

nonexertional limitations to never crawl;[1] frequently but not continuously balance;

occasionally climb, kneel, crouch, or stoop; and only limited exposure to temperature

extremes, dust, humidity, wetness, hazards, fumes, odors, chemicals, or gases.  (R. 26).

The ALJ determined at step four of the sequential evaluation process that Plaintiff is

unable to perform any of her past relevant work, and proceeded to step five of the

process--whether Plaintiff is able to perform other work existing in the national economy,

given her age, education, and work experience.  (R. 28-29).  The ALJ explained his step-

five analysis:

> In determining whether a successful adjustment to other work can be made,
> I must consider the claimant's residual functional capacity, age, education,

---

[1]Plaintiff points out that the ALJ stated both that Plaintiff must never crawl and that she must only occasionally crawl.  (Pl. Br. 23, n.13).  While Plaintiff is correct, the court finds that this is merely a typographical error, and the ALJ found that Plaintiff may never crawl.  As the ALJ noted, Dr. Parsons found Plaintiff can occasionally crawl, but Dr. Winkler found Plaintiff must never crawl.  (R. 28) (citing (Exs. 7F, 11F)).  The ALJ accorded Dr. Parson's opinion "some weight," but accorded "significant weight" to Dr. Winkler's opinion.  Therefore, in this conflict, the court finds that the ALJ accorded greater weight to Dr. Winkler's opinion, and determined Plaintiff must never crawl. Nevertheless, the Commissioner may clarify this ambiguity on remand.

and work experience in conjunction with the Medical-Vocational Guidelines [(the grids)], 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR [(Social Security Ruling)] 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule. The claimant is able to perform the occasional stooping required for light work and light work does not require crouching. (SSR 83-14, SSR 85-15) As kneeling and crawling limitations do not have a significant impact and some limitation on climbing and balancing is not significant, these limitations are found to have little to no effect on the occupational base. (SSR 85-15) Likewise restrictions against exposure to excessive irritants such as noise or dust and exposure to hazards such as unprotected heights do not significantly limit the occupational base. (SSR 85-15) Thus, the additional limitations have little or no effect on the occupational base of unskilled light work.

(R. 29).

The ALJ's decision reflects a proper understanding of the law regarding use of the grids. In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants. Heckler v. Campbell, 461 U.S. 458, 468

8

(1983).  However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately."  Id. 461 U.S. at 462 n.5; see also Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).  Because the grids are based upon the physical exertion requirements for work in the national economy, they may not be fully applicable for claimants who have nonexertional limitations.  Channel, 747 F.2d at 580. Realizing this limitation on the use of the grids, the Commissioner has promulgated a procedure for evaluating claims where both exertional and nonexertional impairments are present:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.   Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); Channel, 747 F.2d at 580-81.

The grids direct a finding in a particular case only when there is an "exact fit" between the criteria of the grid and the situation before the ALJ.  Campbell, 461 U.S. at 468; Channel, 747 F.2d at 579.  As quoted above, where the grid rules do not direct a finding, "full consideration must be given to all of the relevant facts in the case."  20

C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); <u>see</u> <u>also</u> <u>Channel</u>, 747 F.2d at 579-82

(application of the grids where nonexertional limitations are present).

Where plaintiff is unable to do the full range of work in an exertional category, the

ALJ may not conclusively apply the grids.  <u>Channel</u>, 747 F.2d at 582 (error to apply the

grids absent a finding that plaintiff could perform the full range of sedentary work).

Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2,

§ 200.00(e)(2), including expert vocational testimony if necessary, in determining

whether [plaintiff] is or is not disabled."  <u>Channel</u>, 747 F.2d at 583.  Where nonexertional

limitations affect the range of work of which plaintiff is capable, the grids may serve only

as a framework to assist in determining whether sufficient jobs exist in the national

economy given plaintiff's limitations and characteristics.  <u>Gossett v. Bowen</u>, 862 F.2d

802, 806 (10th Cir. 1988).

But, "the mere presence of a nonexertional impairment does not automatically

preclude reliance on the grids.  Use of the grids is foreclosed only '[t]o the extent that

nonexertional impairments further limit the range of jobs available to the [plaintiff].'"

<u>Channel</u>, 747 F.2d at 583, n.6 (quoting <u>Grant v. Schweiker</u>, 699 F.2d 189, 192 (4th Cir.

1983)).  Thus, use of a vocational expert is required only where plaintiff's nonexertional

impairments cause a limitation on the range of work available in a particular occupational

base and where no other evidence (either in the record or in occupational resources upon

which the Commissioner may rely, <u>see</u> 20 C.F.R. §§ 404.1566(d), 416.966(d)) establishes

that a significant number of jobs of which plaintiff is capable are available.  Where the

grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs.  <u>Campbell</u>, 461 U.S. at 468-70.

As relevant here, Plaintiff provides four reasons[2] that it was error to use the grids as a framework for decisionmaking without seeking the services of a VE.  (1) The ALJ's finding of environmental limitations precludes reliance on the grids.  (Pl. Br. 29).  (2) SSR 85-15 should not have been relied upon in this case because it applies only to cases involving solely nonexertional impairments, whereas this case involves exertional and nonexertional impairments.  <u>Id.</u> at 29-30.  (3) The ALJ erred in considering the effect of each nonexertional limitation in isolation without considering the combined effect of all of Plaintiff's nonexertional limitations on the occupational base of light work.  <u>Id.</u> at 30-31.  And, (4) the ALJ failed to consider Plaintiff's pain as a nonexertional impairment.  <u>Id.</u> at 31.   The Commissioner argues that the ALJ properly found that Plaintiff's pain causes exertional limitations in lifting and carrying, sitting, standing, and walking but did not result in nonexertional limitations.  He argues that the ALJ did not rely on SSR 85-15 exclusively, but also relied upon SSR 83-14 and properly found that Plaintiff's nonexertional limitations had little effect on the occupational base for light work.

---

[2]Plaintiff's brief actually suggests five reasons, including the claim that Dr. Goodman's nonexertional limitation to "simple" instructions should have been included in the RFC assessed.  However, the court has assumed for purposes of this opinion that the ALJ's decision is proper through step four of the process.  As demonstrated herein, remand is necessary even if the ALJ's evaluation of Dr. Goodman's opinion was correct.

The ALJ cited to SSR's 83-14 and 85-15 for the proposition that certain of the nonexertional limitations in Plaintiff's RFC have little effect on the occupational base for light work, and concluded that those limitations together "have little or no effect on the occupational base of unskilled light work."  (R. 29).  Consistent with the ALJ's analysis, SSR 83-14 provides that "to perform substantially all of the exertional requirements of most . . . light jobs, a person would not need to crouch and would need to stoop only occasionally."  1983-91 West's Soc. Sec. Reporting Serv., Rulings 44 (1992) (hereinafter West's 1983-91 Rulings).  Similarly, SSR 85-15 notes, "If a person can stoop occasionally . . ., the . . . light occupational base is virtually intact."  Id. at 350.  SSR 85-15 provides that limitations of the ability to crawl or kneel, "would be of little significance in the broad world of work," and notes that, "Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work."  Id.  SSR 85-15 also provides that "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."  Id. at 351.

From these citations, it is evident that SSR's 83-14 and 85-15 lend some support to the ALJ's finding that the nonexertional limitations assessed here have little or no effect on the light occupational base.  However, those SSR's do not address all of the limitations assessed in this case, and do not apply directly to the occupational base for unskilled light work in every instance.  First, as Plaintiff argues SSR 85-15 applies specifically only

where the claimant has <u>solely</u> nonexertional impairments.  <u>Id.</u> 343-46.  SSR 85-15 contains numerous statements regarding the relative effect of nonexertional limitations on the occupational bases.  In an appropriate case (even in a case involving both exertional and nonexertional limitations) an ALJ may properly rely upon one or more of the statements found in SSR 85-15, and this court will not preclude that possibility.  However, the ALJ must recognize the specific context of SSR 85-15 and must use care in applying its statements too broadly.

Here, the ALJ overreached in applying SSR 85-15.  Citing SSR 85-15, the ALJ stated that "some limitation of climbing and balancing is not significant" (R. 29), but the Ruling is not so expansive.  It notes that, "Where a person has some limitation in climbing and balancing <u>and it is the only limitation</u>, it would not ordinarily have a significant impact on the <u>broad world of work</u>."  West's 1983-91 Rulings, at 350 (emphases added).  Here, in contrast to the Ruling, limitations in climbing and balancing are not Plaintiff's <u>only limitations</u>, and the ALJ found Plaintiff was limited to light work, not the broad world of work.

The ALJ stated "restrictions against exposure to excessive irritants such as noise or dust and exposure to hazards such as unprotected heights do not significantly limit the occupational base."  (R. 29).  Again, the Ruling is not so expansive; it states, "Where a person has a medical restriction to avoid <u>excessive</u> amounts of noise, dust, etc., the impact on the <u>broad world of work</u> would be minimal because most job environments do not involve great noise, amounts of dust, etc."  West's 1983-91 Rulings, at 351 (emphases

13

added).  Here, the ALJ did not find Plaintiff must avoid <u>excessive</u> amounts of noise, dust,

etc., he found Plaintiff should have <u>limited exposure</u> to <u>temperature extremes, dust,</u>

<u>humidity, wetness, hazards, fumes, odors, chemicals, or gases</u>.  (R. 29).  The Ruling

seems to contemplate the tension in this case between the limited application presented in

the SSR and the expansiveness of the RFC assessed, for it explains, "Where the

environmental restriction falls between very little and excessive, resolution of the issue

will generally require consultation of occupational reference materials or the services of a

VS."  West's 1983-91 Rulings, at 352.[3]  Moreover, the ALJ found Plaintiff was limited to

<u>light work</u> whereas SSR 85-15 contemplates the effect of these limitations on the <u>broad</u>

<u>world of work</u>.  Further, in the "Policy Statement" of the Ruling, the Commissioner

cautions against applying generalities into a particular case:

> Section 204.00 of Appendix 2 provides an example of one type of
> nonexertional impairment–environmental restrictions–and states that
> environmental restrictions ordinarily would not significantly affect the
> range of work existing in the national economy for individuals with the
> physical capacity for heavy work (or very heavy work); i.e., with no
> medically determinable impairment which limits exertion.  However,
> <u>numerous environmental restrictions</u> might lead to a different conclusion <u>as</u>
> <u>might one or more severe losses of nonexertional functional capacities</u>.  The
> medical and vocational factors of the individual case determine whether
> exclusions of particular occupations or kinds of work so reduces the
> person's vocational opportunity that a work adjustment could not be made.

West's 1983-91 Rulings, at 345 (emphases added).  Here, the ALJ found that Plaintiff

should have <u>limited exposure</u> to nine environmental factors and is limited to light work,

---

[3]The Ruling explains that VS stands for "vocational specialist" and "describes all
vocational resource personnel."  West's 1983-91 Rulings, at 346.

but applied a generality from SSR 85-15 which applies only to a "restriction to avoid

excessive amounts of noise, dust, etc," and addresses all occupational bases.  This applies

the Ruling out of all proportion to its limits, and contrary to the caution contained therein.

    In contrasting nonexertional impairments with exertional impairments, SSR 85-15

provides another caution on applying generalities from the Rulings and other

publications:

> Given no medically determinable impairment which limits exertion, the first
> issue is how much the person's occupational base--the entire exertional
> span from sedentary work through heavy (or very heavy) work--is reduced
> by the effects of the nonexertional impairment(s).  This may range from
> very little to very much, depending on the nature and extent of the
> impairment(s).  In many cases, a decisionmaker will need to consult a
> vocational resource.
>
> The publications listed in sections 404.1566 and 416.966 of the regulations
> will be sufficient vocational resources for relatively simple issues.  In more
> complex cases, a person or persons with specialized knowledge would be
> helpful.  State agencies may use personnel termed vocational consultants or
> specialists, or they may purchase the services of vocational evaluation
> workshops.  Vocational experts may testify for this purpose at the hearing
> and appeals levels.  In this PPS[(Program Policy Statement)], the term
> vocational specialist (VS) describes all vocational resource personnel.

West's 1983-91 Rulings, at 345 (emphasis added).  The ALJ in this case applied the

generalities from SSR 85-15 beyond their limits, and in doing so failed to heed the

cautions given in the Ruling.  SSR 85-15 by itself says very little regarding the range of

light work available for Plaintiff based upon the nonexertional limitations assessed.

    As Plaintiff notes in her brief, in a case with facts quite similar to this, a court in

this district expressed concern "with the ALJ reviewing each nonexertional limitation in

isolation, and not considering the combined impact of all the exertional and nonexertional limitations." Gilbert v. Astrue, No. 6-1230-WEB, 2007 WL 1223908, *6 (D. Kan. April 3, 2007). In Gilbert, the court found the ALJ erred in his consideration of post-polio syndrome at step two, and remanded on that basis. Id. at *4. The court went on to briefly discuss its concerns with the ALJ's application of SSR 85-15, and suggested the ALJ should reconsider his application of that Ruling on remand. Id. *4-6. On the facts of this case, the court finds that the ALJ erred in applying the Ruling too broadly based upon generalities regarding the effect of certain nonexertional limitations in isolation on the broad world of work, and did not call upon the services of a VE to determine the combined effect of all of the limitations assessed on the unskilled light occupational base.

Even when the court assumes the ALJ properly evaluated Plaintiff's disability through the fourth step of the sequential evaluation process, the court finds error in failing to utilize the services of a VE to determine at step five whether there are a significant number of jobs available in the economy which Plaintiff can perform. Therefore, this case must be remanded for further proceedings.

As noted above, Plaintiff also argues that the ALJ erred in many other respects in assessing Plaintiff's RFC. The court finds that Plaintiff raises a substantial issue whether the ALJ's RFC assessment is proper based upon Plaintiff's claims regarding credibility determination, evaluation of the medical opinions, and narrative discussion, and the Commissioner is instructed to reconsider those issues on remand.

16

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Dated this 28th day of July 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**